T.C. Memo. 2002-261

UNITED STATES TAX COURT

CARL L. HENN AND EUGENIA T. HENN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 9895-00.                    Filed October 9, 2002.

E. Martin Davidoff, for petitioners.

Rodney J. Bartlett and Timothy S. Sinnott, for respondent.

MEMORANDUM OPINION

DINAN, Special Trial Judge:  Respondent determined that
petitioners are liable for additions to tax for taxable year 1982
under section 6653(a)(1) and (2) in the respective amounts of
$256 and 50 percent of the interest due on a $5,124 deficiency.
Unless otherwise indicated, section references are to the
Internal Revenue Code in effect for the year in issue, and all

Rule references are to the Tax Court Rules of Practice and Procedure.

The issues for decision are: (1) Whether petitioners are liable for the additions to tax for negligence under section 6653(a), as determined by respondent in the notice of deficiency; and (2) whether petitioners are liable for an addition to tax for a substantial understatement of tax under section 6661(a), as asserted by respondent in his answer to the amended petition.[1]

## Background

Some of the facts have been stipulated and are so found. The stipulations of fact and those attached exhibits which were admitted into evidence are incorporated herein by this reference. Petitioners resided in New Brunswick, New Jersey, on the date the petition was filed in this case.

Petitioner husband (petitioner) earned an undergraduate business degree from Northwestern University, an M.B.A. from Harvard Business School, and a master of arts degree in international economic relations from George Washington

---

[1]In the petition, petitioners argued that (1) the notice of deficiency was issued "beyond the Statute of Limitations"; (2) the notice "is invalid due to the fact that the Commissioner failed to make a determination" after an examination of facts particular to petitioners' case; and (3) the Commissioner failed to allow petitioners "their appeal rights within the Internal Revenue Service". Petitioners concede the first issue. Petitioners did not address the remaining issues in their briefs, and we therefore consider them to have been abandoned and need not address them here.

University.  He also attended an advanced management program at Harvard following the completion of his degree there, as well as postgraduate courses in economics at the University of California at Berkeley.  Petitioner's primary career path was in the United States Navy.  Among other duties, petitioner was responsible for various budgetary, financial, and accounting matters, and spent time as an instructor in management, economics, and international affairs at the Industrial College of the Armed Forces.  After retiring from the Navy and from a subsequent financially related career at American Standard, petitioner began working for E.F. Hutton in 1982.  While there, he participated in a 3-month investment training course for brokers.  He earned certification as a certified financial planner, and was licensed by approximately 10 insurance companies for work related to annuities and life insurance products.

Around 1980, while petitioner was employed by American Standard, he learned of jojoba as an investment opportunity.  In the following years, petitioner learned more about jojoba by word of mouth and by reading articles concerning it.  Near or prior to the time petitioner joined E.F. Hutton in 1982, he invested in Jojoba Research Partners of Newport Beach, California ("the partnership").  A colleague had recommended petitioner contact the partnership's general partner, Robert E. Cole.  Petitioner discussed the partnership with Mr. Cole on several occasions via

telephone, but he did not discuss it with anyone other than those who recommended the investment and those who were involved with it.  The partnership was formed on December 20, 1982.  At this time, petitioner had investments in stocks, bonds, mutual funds, real estate, and other partnership ventures.

Petitioner received and read a private placement memorandum, dated April 1, 1982, relating to his investment in the partnership.  Prefatory material in the memorandum contained the following caveats:

> PROSPECTIVE INVESTORS ARE CAUTIONED NOT TO CONSTRUE THIS MEMORANDUM OR ANY PRIOR OR SUBSEQUENT COMMUNICATIONS AS CONSTITUTING LEGAL OR TAX ADVICE. * * * INVESTORS ARE URGED TO CONSULT THEIR OWN COUNSEL AS TO ALL MATTERS CONCERNING THIS INVESTMENT.

> *     *     *     *     *     *     *

> NO REPRESENTATIONS OR WARRANTIES OF ANY KIND ARE INTENDED OR SHOULD BE INFERRED WITH RESPECT TO THE ECONOMIC RETURN OR TAX ADVANTAGES WHICH MAY ACCRUE TO THE INVESTORS IN THE UNITS.

> EACH PURCHASER OF UNITS HEREIN SHOULD AND IS EXPECTED TO CONSULT WITH HIS OWN TAX ADVISOR AS TO THE TAX ASPECTS.

In a section entitled "Use of Proceeds", an estimation of various expenditures, the memorandum stated that approximately 95 percent of the capital contributions from the partners would be allocated to the research and development contract (regardless of the total amount of the contributions).  The only other expenses were to be organizational costs and commissions.  One of the "risk factors" listed for the investment contained the following discussion:

Federal Income Tax Consequences:  An investment in the Units involves material tax risks, some of which are set forth below.  Each prospective investor is urged to consult his own tax advisor with respect to complex federal (as well as state and local) income tax consequences of such an investment.

\*     \*     \*     \*     \*     \*     \*

(c) Validity of Tax Deductions and Allocations.

The partnership will claim all deductions for federal income tax purposes which it reasonably believes it is entitled to claim.  There can be no assurance that these deductions may not be contested or disallowed by the Service \* \* \* .  Such areas of challenge may include \* \* \* expenditures under the R & D contract \* \* \* .

\*     \*     \*     \*     \*     \*     \*

The Service is presently vigorously auditing partnerships, scrutinizing in particular certain claimed tax deductions. \* \* \* Counsel's opinion is rendered as of the date hereof based upon the representations of the General Partner \* \* \* .  Counsel shall not review the Partnership's tax returns. \* \* \*

(d) Deductibility of Research and Experimental Expenditures.

The General Partner anticipates that a substantial portion of the capital contributions of the Limited Partners to the Partnership will be used for research and experimental expenditures of the type generally covered by Section 174 of the Code.  However, prospective investors should be aware that there is little published authority dealing with the specific types of expenditures which will qualify as research or experimental expenditures within the meaning of Section 174, and most of the expenditures contemplated by the Partnership have not been the subject of any prior cases or administrative determinations.

There are various theories under which such deductions might be disallowed or required to be deferred. \* \* \* No ruling by the Service has been or will be sought regarding deductibility of the proposed expenditures under Section 174 of the Code.

A section entitled "Tax Aspects" contains the following

information concerning a legal opinion from outside counsel

obtained by the general partner:

> The General Partner has received an opinion of counsel
> concerning certain of the tax aspects of this investment.
> The opinion * * * is available from the General Partner.
> Since the tax applications of an investment in the
> Partnership vary for each investor, neither the Partnership,
> the General Partner, nor counsel assumes any responsibility
> for tax consequences of this transaction to an investor.
> * * *The respective investors are urged to consult their own
> tax advisers with respect to the tax implications of this
> investment. * * * Counsel has concluded:
>
>   *   *   *   *   *   *   *
>
> (4) * * * The deductions which may be available to
> the partnership under Section 174 (Research and
> Development) of the Internal Revenue Code are dependent
> upon the acceptance by the Internal Revenue Service or
> the courts of the Partnership's characterization of the
> transaction as a payment of research and development
> fees to the Contractor.

Finally, the investor subscription agreement required a

subscriber upon purchase of an interest to aver that:

> He understands that an investment in the Partnership is
> speculative and involves a high degree of risk, there is no
> assurance as to the tax treatment of items of Partnership
> income, gain, loss, deductions of credit and it may not be
> possible for him to liquidate his investment in the
> Partnership.

Petitioner purchased five units in the partnership for cash

of $5,000 and a promissory note of $9,500. Petitioner made this

investment in 1982 prior to the formation of the partnership on

December 20, 1982. On their 1982 joint Federal income tax

return, petitioners claimed a loss of $13,847 with respect to

this investment, in accordance with the Schedule K-1, Partner's Share of Income, Credits, Deductions, etc., which the partnership had provided to petitioner.  Petitioners did not consult with any attorney or accountant with tax expertise prior to filing their return and they filed the return without the assistance of a return preparer, relying on the return preparation instructions provided by the Internal Revenue Service.

As the result of partnership level proceedings concerning Jojoba Research Partners, this Court ultimately entered a decision disallowing in full the partnership's claimed ordinary loss of $678,439 for taxable year 1982.  This decision was based upon a stipulation by the partnership and the Commissioner to be bound by the outcome of the case in which this Court rendered our opinion in Utah Jojoba I Research v. Commissioner, T.C. Memo. 1998-6.  In that case, we found that the Utah Jojoba I Research partnership ("Utah I") was not entitled to a section 174(a) research or experimental expense deduction (or a section 162(a) trade or business expense deduction) because (a) Utah I did not directly or indirectly engage in research or experimentation, and (b) the activities of Utah I did not constitute a trade or business, nor was there a realistic prospect of Utah I ever entering into a trade or business.  Id.

Following the entry of the decision concerning the partnership, respondent adjusted petitioners' 1982 return by

disallowing their claimed share of the partnership loss, $13,847. Respondent determined that the amount of tax required to be shown on petitioners' return was $16,137 and that there was a deficiency of $5,124 for that year.

In the statutory notice of deficiency which provides the basis for our jurisdiction in this case, respondent determined that petitioners are liable for additions to tax for 1982 under section 6653(a)(1) and (2) in the respective amounts of $256 and 50 percent of the interest due on the $5,124 deficiency. Prior to issuing the notice of deficiency, respondent did not make inquiries of petitioners concerning the proposed adjustments, nor did respondent provide petitioners with an opportunity for an administrative appeal.

In his answer, respondent has asserted that petitioners also are liable for an addition to tax under section 6661(a) for a substantial understatement of tax.

Discussion

Burden of Proof

Prior to trial, petitioners moved to shift the burden of production in this case pursuant to section 7491(c). The motion was denied. In their brief, petitioners argue that respondent bears the burden of proof with respect to the negligence issue because respondent's determination in the notice of deficiency was determined "in an arbitrary manner." We need not revisit the

statutory argument or address the assertion that respondent's determination was arbitrary:  Who bears the burden of proof is immaterial because the record is sufficient to decide this case on the basis of a preponderance of the evidence.  See, e.g., Martin Ice Cream Co. v. Commissioner, 110 T.C. 189, 210 n.16 (1998).  We note, however, that respondent does bear the burden of proof with respect to the substantial understatement addition to tax because it was asserted for the first time in his answer. Rule 142(a).

## Negligence

Section 6653(a)(1) imposes an addition to tax equal to 5 percent of the underpayment of tax if any part of the underpayment is attributable to negligence or intentional disregard of rules or regulations.  Section 6653(a)(2) provides for a further addition to tax equal to 50 percent of the interest due on the portion of the underpayment attributable to negligence or intentional disregard of rules or regulations.  Negligence is defined to include "any failure to reasonably comply with the Tax Code, including the lack of due care or the failure to do what a reasonable or ordinarily prudent person would do under the circumstances."  Merino v. Commissioner, 196 F.3d 147, 154 (3d Cir. 1999) (quoting Heasley v. Commissioner, 902 F.2d 380, 383 (5th Cir. 1990)), affg. T.C. Memo. 1997-385.

The private placement memorandum contained numerous warnings regarding the tax risks involved with the investment. After making the investment regardless of these risks, petitioners claimed a $13,847 ordinary loss for 1982, despite the fact that petitioner had only recently invested just $5,000 in cash in the partnership. This disproportionate and accelerated loss--along with the resulting substantial tax savings--should have been further warning to petitioners for the need to obtain outside advice regarding the propriety of the deduction. Despite these warnings, petitioners did not seek such advice or conduct any other type of inquiry into the propriety of the deduction. Instead, when it came time to complete their tax return, they relied on the Schedule K-1 given to them by the partnership in claiming a loss in an amount nearly triple that of their cash investment.[2] Taking into account petitioner's extensive background and ability to judge the merits of the investment as a whole, it was negligent to have claimed this loss as a deduction based only on the Schedule K-1 and without further inquiry.

---

[2]Petitioners argue that the instructions for Schedules K-1 provided by the Internal Revenue Service required them to report the loss. The instructions state that the individual taxpayer "must treat partnership items * * * consistent with the way the partnership treated the items on its filed return." The instructions have further provisions dealing with errors on Schedules K-1 as well as with the filing of statements to explain inconsistencies between the partnership's return and the taxpayer's return. We find to be unreasonable any belief by petitioners that they were required by law to mechanically deduct a loss which was improper.

Petitioners argue that they were not negligent under the standard set forth by the Fifth Circuit Court of Appeals in Heasley v. Commissioner, 902 F.2d 380 (5th Cir. 1990), revg. T.C. Memo. 1988-408.  In Heasley, the court found that the taxpayers-- who were moderate-income, blue-collar investors with little prior investment experience--were to be held to a lower standard of due care when evaluating whether they were negligent in making an investment.  Petitioners do not merit such a lower standard.  On the contrary, petitioner's excellent business education and extensive financial experience requires a higher standard.  See Henry Schwartz Corp. v. Commissioner, 60 T.C. 728, 740 (1973); Harvey v. Commissioner, T.C. Memo. 2001-16.  Consequently, Heasley is not applicable to the case at hand.[3]

Petitioners cite several cases[4] for the proposition that taxpayers cannot be negligent where the relevant legal issue was "unsettled" or "reasonably debatable".  Petitioners, however, did not receive substantive advice concerning the deduction from anyone independent of the investment, nor did they conduct their own investigation into the propriety of the deduction.  Indeed,

---

[3]Likewise inapplicable is this Court's opinion in Dyckman v. Commissioner, T.C. Memo. 1999-79, to which petitioners cite, regarding the standard to be applied for taxpayers with a "complete lack of sophistication in investment matters."

[4]Everson v. United States, 108 F.3d 234 (9th Cir. 1997); Foster v. Commissioner, 756 F.2d 1430 (9th Cir. 1985), affg. in part and vacating in part 80 T.C. 34 (1983); Hummer v. Commissioner, T.C. Memo. 1988-528.

there is no indication that petitioners ever were aware of the nature of the purportedly uncertain legal issues involved. Petitioners may not rely upon a "lack of warning" as a defense to negligence where no reasonable investigation was ever made, and where they were repeatedly warned of the relevant risks in the private placement memorandum. Christensen v. Commissioner, T.C. Memo. 2001-185; Robnett v. Commissioner, T.C. Memo. 2001-17.

Finally, petitioners argue that they were not negligent because they relied on advice contained in the legal opinion referenced in the private placement memorandum.[5] Reasonable reliance on professional advice may be a defense to the negligence additions to tax. United States v. Boyle, 469 U.S. 241, 250-251 (1985); Freytag v. Commissioner, 89 T.C. 849, 888 (1987), affd. 904 F.2d 1011 (5th Cir. 1990), affd. on another issue 501 U.S. 868 (1991). The advice must be from competent and independent parties, not from the promoters of the investment. LaVerne v. Commissioner, 94 T.C. 637, 652 (1990), affd. without published opinion sub nom. Cowles v. Commissioner, 949 F.2d 401 (10th Cir. 1991), affd. without published opinion 956 F.2d 274 (9th Cir. 1992); Rybak v. Commissioner, 91 T.C. 524, 565 (1988).

According to the private placement memorandum's summary of the letter upon which petitioners claim reliance, the letter

---

[5]No copy of the opinion letter appears in the record, and petitioners have not established that they ever received such a letter.

stated only the following as counsel's opinion concerning a

section 174 deduction:

> The deductions which may be available to the partnership under Section 174 (Research and Development) of the Internal Revenue Code are dependent upon the acceptance by the Internal Revenue Service or the courts of the Partnership's characterization of the transaction as a payment of research and development fees to the Contractor.

It appears that counsel in fact expressed no opinion concerning

the propriety of the deduction, but instead merely stated that

the partnership would take the deduction.  Although it may have

been reasonable if petitioners had overlooked certain minor

details in the summary of the letter, petitioners should have

been alerted to the importance of this claimed deduction:  The

memorandum clearly stated that approximately 95 percent of the

capital contributed to the partnership would be immediately

expended under the research and development contracts.  Among the

various cautionary statements in the memorandum was a discussion

concerning the risks involved in the partnership's claiming a

deduction with respect to this expense, and the memorandum also

specifically stated that no ruling would be requested by the

partnership from the Internal Revenue Service regarding this

issue.

　　As support for a reliance defense, petitioners cite the

unpublished opinion of the Court of Appeals for the Ninth Circuit

in Balboa Energy Fund 1981 v. Commissioner, 85 F.3d 634 (9th Cir.

1996), affg. in part and revg. in part sub nom. without published

opinion Osterhout v. Commissioner, T.C. Memo. 1993-251.  In that case, the court found that it was reasonable for the taxpayers to have relied upon a tax opinion contained in a placement memorandum, stating:  "Absent some evidence that would tell a prospective investor that the opinion of a reputable CPA or law firm should be suspect, we find such reliance to be reasonable under the circumstances."  Id.  Because petitioners' purported reliance does not even rest upon an expressed opinion concerning a critical issue, Balboa Energy Fund 1981 is inapposite to the present case.  Furthermore, considering petitioner's extensive experience and the numerous statements found in the private placement memorandum advising petitioners to consult outside counsel, any reliance by petitioners on the opinion letter would nevertheless have been unreasonable under the circumstances of this case.

We sustain respondent's determination that petitioners are liable for the section 6653(a)(1) and (2) additions to tax for negligence.

Substantial Understatement

As a preliminary matter, petitioners argue that respondent's assertion of the substantial understatement addition to tax is not timely.  However, the parties agree--and the record supports the finding--that the notice of deficiency was issued prior to the running of the applicable period of limitations.  See sec.

6229(a), (d).  Once this Court has jurisdiction pursuant to a timely issued notice of deficiency, our jurisdiction allows us to redetermine the correct amount of the deficiency and any additions to tax--even in an amount greater than that determined in the notice of deficiency--so long as the Secretary asserts a claim for the increase at or before the hearing of the case. Secs. 6213(a), 6214(a).  Because respondent asserted a claim for the increased amount of the section 6661(a) addition to tax prior to trial, this Court has jurisdiction to redetermine the correct amount thereof.  Sec. 6214(a).

Section 6661(a), as amended by the Omnibus Budget Reconciliation Act of 1986, Pub. L. 99-509, sec. 8002, 100 Stat. 1951, provides for an addition to tax of 25 percent of the amount of any underpayment attributable to a substantial understatement of income tax for the taxable year.  A substantial understatement of income tax exists if the amount of the understatement exceeds the greater of 10 percent of the tax required to be shown on the return, or $5,000.  Sec. 6661(b)(1)(A).  Generally, the amount of an understatement is reduced by the portion of the understatement which the taxpayer shows is attributable to either (1) the tax treatment of any item for which there was substantial authority, or (2) the tax treatment of any item with respect to which the relevant facts were adequately disclosed on the return.  Sec. 6661(b)(2)(B).  If an understatement is attributable to a tax

shelter item, however, different standards apply.  First, in addition to showing the existence of substantial authority, a taxpayer must show that he reasonably believed that the tax treatment claimed was more likely than not proper.  Sec. 6661(b)(2)(C)(i)(II).  Second, disclosure, whether or not adequate, will not reduce the amount of the understatement.  Sec. 6661(b)(2)(C)(i)(I).[6]

The understatement of tax of $5,124 on petitioners' return is greater than $5,000 and is greater than 10 percent of the tax required to be shown on the return, or $1,614.  Consequently, it is a substantial understatement of tax.  Sec. 6661(b)(1)(A).

Petitioners first argue that there was substantial authority for claiming the loss.  Substantial authority exists when "the weight of authorities supporting the treatment is substantial in relation to the weight of the authorities supporting contrary positions."  Sec. 1.6661-3(b)(1), Income Tax Regs.  Petitioners argue that at the time they claimed the loss no authority existed indicating that deducting the loss was improper.  Lack of authority, however, necessarily cannot provide the substantial authority required under the statute and regulations.  See, e.g., Hunt v. Commissioner, T.C. Memo. 2001-15; Robnett v. Commissioner, T.C. Memo. 2001-17.  Petitioners also point to the

_____

[6]As a result of our findings, discussed below, we need not decide whether the tax shelter provisions are applicable in this case.

tax opinion letter referenced in the private placement memorandum.  However, the memorandum, and presumably the letter itself, did not refer to any specific authority for deducting the loss based on the research and experimental expense deduction.

Adequate disclosure, another defense to the substantial understatement addition to tax, may be made either in a statement attached to the return or on the return itself if in accordance with the requirements of Rev. Proc. 83-21, 1983-1 C.B. 680.  Sec. 1.6661-4(b), (c), Income Tax Regs.  Petitioners did not attach such a statement to their 1982 return.  Rev. Proc. 83-21, applicable to tax returns filed in 1983, lists information which is deemed sufficient disclosure with respect to certain items, none of which are involved in this case.  If disclosure is not made in compliance with the regulations or the revenue procedure, adequate disclosure on the return may still be satisfied if sufficient information is provided to enable the Commissioner to identify the potential controversy involved.  Schirmer v. Commissioner, 89 T.C. 277, 285-286 (1987).  Merely claiming the loss without further explanation, as petitioners did in this case, was not sufficient to alert respondent to the controversial section 174 deduction of which the partnership loss consisted. See, e.g., Hunt v. Commissioner, supra; Robnett v. Commissioner, supra.

Finally, petitioners argue that they acted with reasonable cause and in good faith in claiming the loss.  Section 6661(c) provides the Secretary with the discretion to waive the section 6661(a) addition to tax if the taxpayer shows he acted with reasonable cause and in good faith.  Generally, we review the Secretary's failure to waive the addition to tax for abuse of discretion.  Martin Ice Cream Co. v. Commissioner, 110 T.C. 189, 235 (1998).  The most important factor in determining whether a taxpayer acted with reasonable cause and in good faith generally is "the extent of the taxpayer's effort to assess the taxpayer's proper tax liability under the law."  Sec. 1.6661-6(b), Income Tax Regs.  For the same reasons we found petitioners to be negligent in claiming the reported loss as a deduction, we find petitioners also lacked reasonable cause for doing so.  Consequently, petitioners are not entitled to a waiver under section 6661(c), and they are liable for the addition to tax under section 6661(a) for a substantial understatement of tax.[7]

---

[7]Respondent stated in his answer that this addition to tax was in the amount of $512.40.  As respondent argued in his pre-trial memorandum and orally at trial, this amount is incorrect.  The correct computation under the provisions of section 6661(a) results in an addition to tax of $1,281.

To reflect the foregoing,

Decision will be entered for
respondent for the increased
additions to tax.