T.C. Memo. 2012-80

UNITED STATES TAX COURT

MARC S. BARNES AND ANNE M. BARNES, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 20413-08.                     Filed March 21, 2012.

Gerald W. Kelly, Jr., and Matthew F. Penater, for petitioners.

Erin R. Hines, for respondent.

MEMORANDUM OPINION

MORRISON, Judge:  Marc S. Barnes and Anne M. Barnes filed a joint
income-tax return for tax year 2003.  At all relevant times, the Barneses were
husband and wife.

On June 3, 2008, respondent ("the IRS") issued the Barneses a statutory notice of deficiency, determining a deficiency in tax of $54,486, a section 6662(a)[1] accuracy-related penalty of $10,897, and a section 6651(a)(1) late-filing addition to tax of $5,691 with respect to their 2003 return.  The deficiency was based on the following adjustments:  (1) disallowance of a $123,006 loss claimed on Schedule E, Supplemental Income and Loss; (2) allowance of $319 in automobile expenses, in addition to those claimed on the return; (3) allowance of $150 in "promoters expenses", in addition to those claimed on the return; (4) disallowance of $28,592 in talent expenses; (5) allowance of $3,679 in travel expenses, in addition to those claimed on the return; (6) allowance of $6,067 in advertising expenses, in addition to those claimed on the return; and (7) computational adjustments to self-employment tax, the self-employment tax deduction, itemized deductions, and exemptions.  The Barneses agreed to the adjustments to automobile expenses, "promoters expenses", talent expenses, travel expenses, and advertising expenses.

On August 19, 2008, the Barneses timely petitioned the Tax Court for a redetermination of their income-tax deficiency for 2003.  Their petition challenged four determinations made by the IRS:  (1) the disallowance of a $123,006

_____

[1]All section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

Schedule E loss attributable to the Barneses' interest in Whitney Restaurants, Inc. ("Whitney"), an S corporation; (2) the rejection of the Barneses' assertion that they overreported, by $30,000, the gross receipts of a sole proprietorship reported on Schedule C, Profit or Loss From Business; (3) the determination that the Barneses are liable for a section 6662(a) accuracy-related penalty; and (4) the determination that the Barneses are liable for a section 6651(a)(1) late-filing addition to tax. At the time the case was submitted for decision, the Barneses conceded liability for the section 6651(a)(1) late-filing addition to tax.

Therefore, the issues remaining for decision are: (1) whether the Barneses were entitled to claim as a deduction $123,006 in passthrough losses from Whitney (we find that they were not so entitled); (2) whether the Barneses overreported Schedule C gross receipts by $30,000 (we find that they did not); and (3) whether the Barneses are subject to a section 6662(a) accuracy-related penalty attributable to a substantial understatement of income tax (we find that they are).

We have jurisdiction pursuant to section 6214 to redetermine the deficiency and penalty determined in the notice of deficiency. See sec. 6214(a).

## Background

The parties have submitted this case fully stipulated for decision under Rule 122. See Rule 122(a). We adopt their stipulations.

Marc S. and Anne M. Barnes are Washington, D.C.-based entrepreneurs. During tax year 2003 the Barneses were engaged in several different lines of business, including restaurants, nightclubs, and event promotion. They engaged in these various businesses through several different business entities, including two S corporations (one of which was Whitney Restaurants, Inc.), and a wholly owned subchapter C corporation. The subchapter C corporation, Influence Entertainment, Inc., engaged in the business of event promotion. The Barneses also engaged in the business of event promotion via an unincorporated sole proprietorship whose earnings were reported directly on the Barneses' 2003 income-tax return.

The Barneses' 2003 joint income-tax return was prepared by an employee of the firm Sakyi & Associates.

Whitney Restaurants, Inc.

Whitney, known until 2001 as R.G.B., Inc., operated the Republic Gardens restaurant in Washington, D.C. The parties disagree over the Barneses' correct basis in their Whitney stock for tax year 2003 and whether their basis was sufficient to claim the disallowed $123,006 as a Schedule E deduction on their 2003 return. The IRS alleges that the Barneses erred in two respects when calculating basis: (1) they erroneously calculated an increase in basis of $22,282

for 1996 and (2) they failed to calculate a reduction in basis of $136,228.50 for 1997.

We begin with a brief overview of the relevant rules governing taxation of S corporation shareholders. In determining the tax liability of an S corporation shareholder for a particular year, one preliminary step is to calculate the shareholder's basis in S corporation stock for the purposes of section 1366(d)(1). That section places a limit on the amount of passthrough S corporation losses that are deducted or other otherwise taken into account in determining the shareholder's income in a given year. The limit is equal to the shareholder's basis in the S corporation stock.[2] Sec. 1366(d)(1)(A). For this purpose, the basis calculation starts with the basis at the end of the preceding year, after all adjustments to basis for the preceding year. The basis from the preceding year is then adjusted for certain transactions that occur during the year of the loss. Sec. 1.1366-2(a)(3)(i), Income Tax Regs. One such adjustment is that basis is increased by all contributions of capital by the shareholder to the corporation. See secs. 1012, 351(a), 358(a)(1). At this stage, no adjustment is made for losses

_____

[2]The limit is equal to the sum of the shareholder's basis in the S corporation stock and basis in any indebtedness of the S corporation to the shareholder, see sec. 1366(d)(1), but the Barneses made no loans to Whitney during the years at issue. We therefore omit any further discussion of basis in indebtedness.

passed through to the shareholder in the year for which the limitation on losses is being calculated. Sec. 1.1366-2(a)(3)(i), Income Tax Regs.

Having ascertained the loss limit for the year, the next step is to determine how the shareholder's pro rata share of the S corporation's income or loss is taken into account in determining the shareholder's income. The S corporation is required to report to the shareholder his or her pro rata share of the S corporation's tax items, including income or loss, on a Schedule K-1, Partner's Share of Income, Credits, Deductions, etc. See sec. 6037(b). If the Schedule K-1 is incorrect, the shareholder must report the correct pro rata share of passthrough tax items. See sec. 1366(a)(1); Henn v. Commissioner, T.C. Memo. 2002-261, slip op. at 10, n.2. If the S corporation had income for the year, the shareholder's gross income will be increased by his or her share of the S corporation's income. See sec. 1366(a)(1), (c). If the S corporation had a loss for the year, the shareholder's income will take into account the shareholder's pro rata share of the S corporation's loss, see sec. 1366(a)(1), to the extent of the limitation in section 1366(d)(1). As noted before, that section provides that a shareholder's pro rata share of the S corporation's loss is taken into account only to the extent of the shareholder's basis in his or her S corporation stock. Sec. 1366(d)(1)(A). If the shareholder's pro rata share of the loss exceeds the shareholder's basis, the

shareholder must incorporate into his or her income calculation for the year an amount of the loss equal to his or her basis in the S corporation stock.[3]  See sec. 1366(a)(1), (d)(1).  The portion of the shareholder's pro rata share of losses that exceeds basis is not taken into account, as a deduction or otherwise, in the current year in computing the shareholder's taxable income.  See sec. 1366(d)(1).  Losses in excess of basis, which we refer to here as "suspended losses", are deemed to be incurred in the following year with respect that shareholder.  See sec. 1366(d)(2).

S corporation shareholders must make further adjustments to basis to account for the pro rata share of income or loss required to be taken into account by the shareholder in calculating his or her tax liability.  If the shareholder had passthrough income from the S corporation, basis is increased by the shareholder's pro rata share of the S corporation's income.  See sec. 1367(a)(1)(A) and (B).  An exception to this rule provides that no increase in basis is made for any amount of passthrough income that was required to be reported by the shareholder and included in gross income but that the shareholder failed to report on his or her return.  Sec. 1367(b)(1).  If the shareholder had a passthrough loss from the S corporation, basis is reduced (but not below zero) by the shareholder's pro rata

---

[3]If the passthrough loss is ordinary, the loss is taken into account as a deduction against the shareholder's ordinary income.  See sec. 62(a).

share of the S corporation's loss, to the extent that it was required to be taken into account in computing the shareholder's income, as a deduction or otherwise. See sec. 1367(a)(2)(B) and (C). Basis is not reduced by losses that were not taken into account because of the section 1366(d)(1) limitation. See id. Thus, S corporation shareholders do not reduce basis by the amount of suspended loss that was not taken into account in calculating the shareholder's income because of insufficient basis. See secs. 1366(d)(1), 1367(a)(2)(B) and (C). With these additional adjustments, a final basis figure is reached. This is the amount that is used to calculate the section 1366(d)(1) limit on passthrough losses for the next year.

Aside from two exceptions, the parties do not dispute this description of the relevant statutory provisions. The Barneses offer the following interpretations of the applicable rules: (1) basis increases for amounts reported by a shareholder as his or her pro rata share of passthrough S corporation income, even where the reported income amount is not actually the shareholder's pro rata share of the S corporation's income for that year; and (2) basis is not reduced for passthrough S corporation losses that the shareholder did not report on his or her return and did not claim as a deduction, despite being required to do so by section 1366(a)(1). As we decide below, the Barneses' interpretations are incorrect.

In 1995 the Barneses acquired a 50% interest in Whitney by making a

$44,271 contribution of capital. No other transactions affected the Barneses' basis

in their Whitney stock for the purposes of the section 1366(d)(1) limitation for

1995. Consequently, at the end of 1995, and for the purposes of the section

1366(d)(1) limitation on passthrough losses for 1995, the Barneses had a basis of

$44,271 in their Whitney stock. Whitney operated at a loss in 1995. The

Barneses' pro rata share of that loss, as reported on a Schedule K-1 Whitney

issued to the Barneses, was $66,553. The parties do not dispute that $66,553--the

amount reported on the Schedule K-1--is the Barneses' correct pro rata share of

Whitney's losses for 1995. The parties also agree that, for 1995, the correct

amount of the Barneses' deduction for passthrough losses from Whitney was

$44,271 (the amount of their basis in the Whitney stock).[4] They agree that this

deduction required a $44,271 reduction in stock basis, leaving the Barneses with a

---

[4]Because the Barneses' 1995 tax return is not a part of the record, we cannot ascertain what portion of the 1995 passthrough loss the Barneses actually claimed as a deduction on their 1995 return. The IRS contends that the Barneses claimed as a deduction the full $66,553, despite the fact that they did not have sufficient basis. The Barneses seem to contend that they claimed as a deduction only $44,271 for 1995 and carried forward a suspended loss of $22,282. See infra p. 20.

basis in their Whitney stock, after reduction, of zero.[5] The parties agree that, at the end of 1995, the Barneses had a suspended loss attributable to their interest in Whitney of $22,282.[6]

In 1996, the Barneses made no contributions of capital to Whitney. No other transactions took place that affected the Barneses' basis in the Whitney stock for purposes of the section 1366(d)(1) limitation for 1996. Consequently, the parties agree that the Barneses' basis in the Whitney stock for the purposes of the section 1366(d)(1) limitation was zero.[7] Whitney reported a loss for 1996. The Barneses' pro rata share of that loss, as reported on a Schedule K-1 Whitney issued to the Barneses, was $136,228.50. The parties do not dispute that the $136,228.50 amount reported on the Schedule K-1 is the Barneses' correct pro rata share of Whitney's 1996 loss. However, the Barneses reported on their 1996 return that they had a pro rata gain from Whitney of $22,282.[8] Because the

---

[5]For basis calculations of both parties, see infra pp. 19, 20.

[6]The amount of the suspended loss is equal to the amount by which the passthrough loss, $66,553, exceeded the Barneses' 1995 basis before adjustment for passthrough items, $44,271. See infra pp. 19, 20.

[7]See infra pp. 19, 20.

[8]Although it is not necessary to determine the Barneses' motives for reporting their $136,228.50 pro rata share of the Whitney loss as a $22,282 gain, the IRS speculates that the Barneses reported this "phantom" gain in order to

(continued...)

Barneses had a basis in the Whitney stock of zero for the purposes of the section 1366(d)(1) limitation, their deduction for their share of the $136,228.50 passthrough loss for 1996 was limited to zero. Because the Barneses could not deduct the $136,228.50 loss for lack of basis, there was a suspended loss for 1996 of $136,228.50.[9] Calculated correctly, the Barneses' basis in their Whitney stock at the end of 1996 did not increase for the $22,282 of phantom gain they reported on their 1996 return. Such basis was also not adjusted for the zero passthrough losses taken into account pursuant to section 1366(a)(1) and (d)(1) in 1996. Basis, therefore, remained zero. The Barneses had a combined suspended loss at the end

---

[8](...continued)
remedy an error the IRS contends they made on their 1995 return. See supra note 4. According to the IRS, the Barneses behaved as if they believed a shareholder could deduct a passthrough loss in excess of basis as long as the shareholder reduced basis below zero by the amount of the loss in excess of basis and, in the next year, had a passthrough gain that was includable in gross income, increasing basis by the amount of the gain to a non-negative amount. In accord with this erroneous construction of the subch. S rules, the IRS contends that the Barneses: (1) deducted a $66,553 loss on their 1995 return, even though their loss limitation was $44,271; (2) calculated (erroneously) that their basis in their Whitney stock was reduced by the $66,553 loss, to negative $22,282; (3) inaccurately reported that their share of Whitney's passthrough income for 1996 was $22,282 (even though their share of Whitney's passthrough items for that year was actually a $136,228.50 loss); and (4) increased their basis by $22,282 to zero for 1996.

[9]See infra p. 19.

of 1996 of $158,510.50, consisting of the $22,282 loss suspended in 1995 and the $136,228.50 loss suspended in 1996.[10]

The Barneses agree that they made no contributions of capital to Whitney in 1996; that no other transactions took place that would have affected their basis in the Whitney stock for purposes of the section 1366(d)(1) limitation for 1996; that their basis in the Whitney stock, for purposes of the loss limitation for 1996, was zero; and that they had a 1995 suspended loss of $22,282. The Barneses also do not dispute that the $136,228.50 passthrough loss reported on the Schedule K-1 was their correct pro rata share of Whitney's 1996 losses. However, as we noted above, the Barneses reported income from Whitney of $22,282 on their 1996 income-tax return. Basis calculations the Barneses submitted in their brief suggest they calculated that their basis increased by the $22,282 they reported as income from Whitney on their 1996 return.[11] The same calculations suggest that they calculated that their basis was then reduced by the $22,282 loss suspended in 1995.[12] Thus, according to the Barneses' basis calculations, the net effect of these

---

[10]See infra p. 19.

[11]See infra p. 20.

[12]See infra p. 20. Because the Barneses' basis calculations appear to reflect the theory that basis is reduced by whatever passthrough loss was actually reported

(continued...)

adjustments was that their basis in the Whitney stock, at the end of 1996 and after all adjustments for the year, was zero and that they had no suspended loss.[13] Correctly calculated, however, the Barneses' basis did not increase by $22,282 because that amount does not represent the Barneses' pro rata share of Whitney's passthrough income for 1996.

The parties agree that at the beginning of 1997 the Barneses' basis in the Whitney stock was zero. In 1997 the Barneses made a $278,000 contribution of capital to Whitney. As a result of this contribution, the Barneses' basis in the Whitney stock, for purposes of the section 1366(d)(1) limitation on the deduction of losses for 1997, was $278,000 (equal to zero, increased by the amount of the $278,000 contribution). Both parties agree that no other transactions affected the Barneses' basis in their Whitney stock for 1997 for purposes of the section 1366(d)(1) limitation. According to the Schedule K-1 Whitney issued to the Barneses, their pro rata share of Whitney's 1997 loss was $52,594. The parties do

---

[12](...continued)
on their individual tax returns, the fact that they calculated a $22,282 basis reduction for 1996 for the loss suspended in 1995 suggests that they claimed the $22,282 suspended loss as a deduction on their 1996 return. However, on their 1996 tax return the Barneses did not claim the $22,282 as a deduction. It appears from the record that the Barneses actually overstated their 1996 income by $22,282.

[13]See infra p. 20.

not dispute that $52,594--the amount reported on the Schedule K-1--is the Barneses' correct pro rata share of Whitney's losses for 1997 and that the same amount--$52,594--is the correct amount of the Barneses' deduction for Whitney's 1997 loss. In addition, the $22,282 suspended loss for 1995 and the $136,228.50 suspended loss for 1996 were deemed to be incurred with respect to the Barneses for 1997. The Barneses claimed a deduction for $52,594 in passthrough losses attributable to Whitney on their 1997 tax return. On their 1997 return the Barneses did not claim a deduction for the $22,282 loss suspended in 1995[14] or for the $136,228.50 loss suspended in 1996, despite the fact that they had sufficient stock basis to do so. They also made no adjustments to basis to account for the 1996 loss.[15] However, as the IRS contends, the Barneses' basis in the Whitney stock was reduced for 1997 by $136,228.50, even though they did not report the loss on their 1996 return or claim the amount of the carried-forward loss as a deduction on their 1997 return.[16] The Barneses' correct basis, at the end of 1997

---

[14]The IRS speculates that the Barneses did not claim the $22,282 suspended loss from 1995 as a deduction on their 1997 return because they had already--and erroneously--claimed that amount as a deduction on their 1995 return. See supra note 4.

[15]See infra p. 20.

[16]In 1997 basis was also reduced by the $22,282 loss suspended in 1995.

(continued...)

and after all adjustments (i.e. a $52,594 reduction for the 1997 loss, a $136,228.50 reduction for the 1996 suspended loss, and a $22,282 reduction for the 1995 suspended loss) was $66,895.50.[17]  The Barneses contend that they "are not required to reduce their basis for losses that were never claimed or deducted."  They argue that their correct basis in the Whitney stock, at the end of 1997 and after all adjustments, was $225,406.[18]  Both parties agree that the Barneses had no suspended losses attributable to Whitney at the end of 1997.

For the next five years the Barneses continued to make contributions of capital and Whitney continued to report almost exclusively losses.  The following table summarizes the Barneses' contributions and their pro rata share of Whitney's income or loss for tax years 1998 through 2002:

---

[16](...continued)
  According to basis calculations the Barneses submitted, they calculated a $22,282 reduction in basis for the 1995 suspended loss in 1996.  See infra p. 20.

[17]See infra p. 19.

[18]See infra p. 20.

|      |              | Share of income        |
| Year | Contribution | and (loss)[1]          |
| ---- | ------------ | ---------------------- |
| 1998 | $121,295.43  | ($188,091)             |
| 1999 | 125,931.00   | (168,634)              |
| 2000 | 66,613.00    | 72,720                 |
| 2001 | 135,000.00   | (155,844)              |
| 2002 | 60,922.00    | (29,525)               |

[1]As reported on Schedules K-1 Whitney issued to the Barneses.

The parties do not dispute that the shares of income or loss reported on the Schedules K-1 are correct. There is also no dispute that the Barneses correctly reported their pro rata share of income and loss from Whitney on their income-tax returns for tax years 1998 through 2002[19] and that no other transactions--besides

_____

[19]The parties also agree that the Barneses' reported income-tax liability correctly reflected passthrough items from Whitney for tax years 1998, 2001, and 2002. They disagree about the correct amount of the deduction for passthrough losses for 1999 and 2000. For tax year 1999, the Barneses' pro rata share of passthrough losses from Whitney was $168,634. The Barneses' basis in their Whitney stock, for purposes of the sec. 1366(d)(1) limitation on losses for 1999, was $126,030.93. Therefore, the correct amount of the passthrough loss deduction for 1999 was $126,030.93. Because the Barneses did not have sufficient basis in 1999 to claim as a deduction the full $168,634 Whitney loss, there was also a suspended loss for that year of $42,603.07. This $42,603.07 loss suspended in 1999 should have been claimed as a deduction on the Barneses' 2000 tax return. See infra p. 19. However, the Barneses erroneously claimed as a deduction on their 1999 tax return their full $168,634 share of the Whitney losses. See infra p.

(continued...)

contributions of capital and pro rata shares of income and loss taken into account--affected basis in the Whitney stock for those years.  However, because the parties disagree as to the Barneses' correct basis in the Whitney stock at the end of 1997, they also disagree as to the correct end-of-year adjusted basis for tax years 1998 through 2002.[20]

At the beginning of 2003, as the IRS contends, the Barneses had a basis of $107,282.93 in their Whitney stock and no suspended losses attributable to Whitney.[21]  The Barneses contend that their opening basis for 2003 was $265,793.43 and that they had no suspended losses.[22]  Both parties agree that during 2003 the Barneses made a $46,000 contribution of capital, resulting in a $46,000 increase in stock basis.  No other transactions affected the Barneses' basis in their Whitney stock for purposes of the section 1366(d)(1) limitation on losses for 2003.

---

[19](...continued)
20.  This deduction exceeded their correct 1999 basis in the Whitney stock by $42,603.07.

[20]See infra pp. 19, 20.

[21]See infra p. 19.

[22]See infra p. 20.

For 2003 Whitney reported a large loss. According to the Schedule K-1 Whitney issued to the Barneses for that year, their share of the loss was $276,289. Neither party disputes that the amount reported on the Schedule K-1 is the Barneses' correct pro rata share of the loss. On Schedule E of their 2003 income-tax return, the Barneses deducted $276,289 in passthrough losses attributable to their interest in Whitney. In its notice of deficiency, the IRS determined that $123,006 of the deduction was not permissible because the Barneses had insufficient basis. According to IRS calculations, the Barneses' basis, for purposes of the section 1366(d)(1) limitation for 2003, was $153,282.93. Therefore, the IRS argues, the Barneses had sufficient basis to deduct only $153,282.93 of the 2003 loss. The remainder--$123,006, rounded to the nearest whole number--was disallowed. The Barneses dispute this determination. They claim their 2003 stock basis, for purposes of the section 1366(d)(1) limitation, was $311,793.43.[23] Therefore, they contend, the correct deduction for their share of the 2003 Whitney loss was $276,289.

By way of summary, the IRS correctly contends that the Barneses' basis in the Whitney stock for each of the years 1995 through 2003 is properly calculated as follows:

---

[23]See infra p. 19.

| Year | Initial basis | Contributions of capital[1] | Income or loss from Whitney[2] | Basis after adjustment | Suspended losses |
|------|------|------|------|------|------|
| 1995 | -0- | $44,271.00 | ($66,553.00) | -0- | ($22,282.00) |
| 1996 | -0- | -0- | (136,228.50) | -0- | (158,510.50) |
| 1997 | -0- | 278,000.00 | (52,594.00) | $66,895.50 | -0- |
| 1998 | $66,895.50 | 121,295.43 | (188,091.00) | 99.93 | -0- |
| 1999 | 99.93 | 125,931.00 | (168,634.00) | -0- | (42,603.07) |
| 2000 | -0- | 66,613.00 | 72,720.00 | 96,729.93 | -0- |
| 2001 | 96,729.93 | 135,000.00 | (155,844.00) | 75,885.93 | -0- |
| 2002 | 75,885.93 | 60,922.00 | (29,525.00) | 107,282.93 | -0- |
| 2003 | 107,282.93 | 46,000.00 | (276,289.00) | -0- | [3](123,006.07) |

[1]Contributions of capital are added to initial basis, increasing initial basis by the amount of the contribution.

[2]Basis, after being increased by the amount of any capital contribution, is then adjusted for passthrough items of income and loss. Items of income and loss for each year match income and loss items on the Schedules K-1 issued to the Barneses.

[3]This amount, rounded to the nearest dollar, is equal to the amount of loss the IRS disallowed in its notice of deficiency.

The Barneses disagree. They claim that their basis in the Whitney stock is properly calculated as follows:

| Year | Initial basis | Contributions of capital[1] | Income or loss from Whitney reported on return[2] | Basis after adjustment | Suspended losses |
|---|---|---|---|---|---|
| 1995 | -0- | $44,271.00 | ($66,553) | -0- | ($22,282) |
| 1996 | -0- | -0- | [3]22,282 | -0- | -0- |
| 1997 | -0- | 278,000.00 | (52,594) | $225,406.00 | -0- |
| 1998 | $225,406.00 | 121,295.43 | (188,091) | 158,610.43 | -0- |
| 1999 | 158,610.43 | 125,931.00 | (168,634) | 115,907.43 | -0- |
| 2000 | 115,907.43 | 66,613.00 | 72,720 | 255,240.43 | -0- |
| 2001 | 255,240.43 | 135,000.00 | (155,844) | 234,396.43 | -0- |
| 2002 | 234,396.43 | 60,922.00 | (29,525) | 265,793.43 | -0- |
| 2003 | 265,793.43 | 46,000.00 | (276,289) | 35,504.43 | -0- |

[1]Contributions of capital are added to initial basis, increasing initial basis by the amount of the contribution.

[2]Basis, after being increased by the amount of any capital contribution, is then adjusted for items of income and loss. Items of income and loss here are items of income and loss attributable to Whitney that the Barneses reported on their income-tax returns for each respective year.

[3]Income in this amount was not indicated on the Schedule K-1 that Whitney issued to the Barneses for 1996. The parties stipulated that the Schedule K-1 for that year reflected a loss of $136,228.50.

Influence Entertainment, Inc., and the Sole Proprietorship

During 2003, the Barneses engaged in the business of event promotion[24] via two separate ventures. The first event-promotion business we refer to as the "sole proprietorship". It is an unincorporated business venture conducted directly by Marc Barnes, with assistance from Anne Barnes, and its income was reported on a Schedule C attached to the Barneses' 2003 return. In 2003, the sole proprietorship reported gross receipts of $168,997. The Barneses did not submit any evidence regarding how gross receipts for the sole proprietorship were calculated or what items were included in the $168,997 total.

The second event-promotion business was conducted by Anne Barnes's wholly owned C corporation, Influence Entertainment, Inc. We refer to this entity as "Influence Entertainment". On its Form 1120, U.S. Corporation Income Tax Return, for 2003, Influence Entertainment reported gross receipts of $619,666. The Barneses did not submit any evidence regarding how Influence Entertainment calculated its gross receipts or what items were included in the $619,666.

---

[24]The term "event promotion" refers to the activity of advertising or operating concerts, sports matches, festivals, and similar live events, whether as an agent or for one's own account. On their 2003 income-tax return, the Barneses refer to the sole proprietorship as "Event Promotion", a name which we do not use because it risks confusion with their other event-promotion venture, Influence Entertainment, Inc.

During 2003 Influence Entertainment organized a concert series called "Latin Rock en Espanol" at Dream Nightclub in Washington, D.C. Influence Entertainment signed a related sponsorship agreement with Anheuser-Busch, Inc. According to the agreement, dated April 21, 2003, Influence Entertainment would be paid a sponsorship fee of $30,000 to advertise Anheuser-Busch as the "exclusive alcohol and non-alcohol malt beverage sponsor" at a minimum of six "Latin Rock" concerts. Influence Entertainment received a $60,000 check, dated June 4, 2003, from Anheuser-Busch, Inc. The Barneses contend that half of this amount, $30,000, was payment for services rendered by Influence Entertainment, and that the remaining $30,000 was payment for services rendered by the sole proprietorship. According to the Barneses, the full amount of the payment, $60,000, was erroneously included in gross receipts of the sole proprietorship, resulting in a $30,000 overstatement of its gross receipts. The IRS disputes this contention.

## Discussion

### I. Burden of Proof

In proceedings before the Tax Court, the taxpayer generally bears the burden of proving that the IRS's determinations in a notice of deficiency are erroneous. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). This

burden is satisfied by a preponderance of the evidence. See Estate of Gilford v. Commissioner, 88 T.C. 38, 51 (1987). If the evidence is in equipoise, the taxpayer has not met his burden and the determination of the IRS will be sustained. See Elliott v. Commissioner, 40 T.C. 304, 311 (1963). Section 7491 imposes the burden of proof on the IRS with respect to any factual issue relevant to determining the taxpayer's tax liability, provided the taxpayer has (1) complied with all substantiation requirements, (2) maintained all required records, (3) cooperated with all reasonable requests for information from the IRS, and (4) introduced credible evidence with respect to the factual issue relevant to ascertaining the taxpayer's tax liability. Sec. 7491(a)(1) and (2); Higbee v. Commissioner, 116 T.C. 438, 440-441 (2001). "Credible evidence" is evidence that, after critical analysis, would constitute a sufficient basis for deciding the issue in favor of the taxpayer if no contrary evidence were submitted. Ocmulgee Fields, Inc. v. Commissioner, 132 T.C. 105, 114 (2009), aff'd, 613 F.3d 1360 (11th Cir. 2010). The taxpayer bears the burden of proving that all the requirements of section 7491 have been satisfied. Rolfs v. Commissioner, 135 T.C. 471, 483 (2010), aff'd, __ F.3d __ (7th Cir. Feb. 8, 2012).

On April 29, 2009, the Barneses filed a motion to shift burden of proof, requesting that the burden be imposed on the IRS pursuant to section 7491. On

May 11, 2009, we denied that motion without prejudice. When the case was called for trial on June 10, 2009, the Barneses renewed their motion. We deny this motion because the Barneses have not presented credible evidence with respect to any factual issue. Whether the Barneses had sufficient basis in their S corporation stock to claim as a Schedule E deduction $123,006 in passthrough losses from Whitney is a legal question that we resolve by applying the law to the stipulated facts. Consequently, the allocation of the burden of proof has no bearing on that legal issue. As for the Barneses' other claims--that their failure to claim as a deduction for 1997 a $136,228.50 passthrough loss from Whitney gives rise to an NOL that is available to offset gross income in 2003, see infra pp. 34-37, and that they overstated gross receipts of the sole proprietorship by $30,000, see infra pp. 37-38-- the Barneses have not presented credible evidence within the meaning of section 7491 with respect to the factual elements of those issues. As explained infra, the evidence the Barneses submitted does not give us a sufficient factual basis to resolve either of those issues in their favor. Therefore, we find that the Barneses have not satisfied the requirements of section 7491 and the burden of proof will not be imposed on the IRS pursuant to that provision.

II.     Disallowance of the Schedule E Deduction

In its notice of deficiency the IRS disallowed $123,006 of Schedule E losses attributable to the Barneses' interest in Whitney.  It determined that, after properly adjusting basis in accordance with the Internal Revenue Code, the Barneses did not have sufficient basis in their Whitney stock in 2003 to deduct the disallowed $123,006 portion of Whitney's 2003 passthrough losses.

The Barneses offer several theories as to why the IRS's determination is incorrect.  We address each argument in turn.

A.     Adjustments to Basis

First, the Barneses dispute the IRS's determination that they lacked sufficient basis to claim as a deduction their full $276,289 pro rata share of passthrough losses from Whitney on their 2003 income-tax return.  According to the IRS, the Barneses made two errors in calculating basis in their Whitney stock before tax year 2003: (1) in 1996 the Barneses increased basis by $22,282 in putative passthrough income, despite the fact that the Schedule K-1 Whitney issued to them for that year reflected a passthrough loss of $136,228.50; and (2) in 1997 the Barneses failed to reduce basis to account for $136,228.50 in passthrough losses that they were required to take into account in that year but failed to claim as deduction on their return.

### 1. Upward Basis Adjustment in 1996

The IRS takes the position that the Barneses' basis in the Whitney stock did not increase by $22,282 in 1996. It contends that, under section 1367, there is no upward basis adjustment for amounts that are erroneously reported by the shareholder as passthrough income but that do not correspond to the shareholder's actual pro rata share of passthrough income. The Barneses seem to argue, without citation of authority, that the upward basis adjustment was appropriate because they reported $22,282 in passthrough income on their 1996 return. We agree with the position of the IRS.

Pursuant to section 1366(a)(1)(A), S corporation shareholders take into account their "pro rata share" of the S corporation's income when calculating their income-tax liability. A shareholder's pro rata share of income is equal to the S corporation's income multiplied by the proportion of the corporation's total shares owned by the shareholder during the year in which the income was earned. See sec. 1377(a)(1). The S corporation is required to inform shareholders of their annual pro rata share of income, which it does by issuing the shareholders Schedules K-1. See sec. 6037(a) and (b).

Under section 1367(a)(1)(A), an S corporation shareholder increases basis in S corporation stock by his or her pro rata share of passthrough income for the

year, i.e. the income items described in section 1366(a)(1)(A). Whitney issued a

Schedule K-1 to the Barneses for tax year 1996, the accuracy of which the Barneses

do not dispute. That Schedule K-1 does not reflect any 1996 passthrough income.

It reports a loss, of which the Barneses' pro rata share was $136,228.50. Therefore,

we hold that the Barneses had no passthrough income items attributable to Whitney

in 1996, but, instead, had a passthrough loss of $136,228.50 for that year. The fact

that they reported $22,282 of passthrough income on their return is irrelevant.

Section 1367(a)(1)(A) provides only for basis adjustments which correspond to the

shareholder's pro rata share of income. It does not provide for basis to be adjusted

for passthrough items reported by shareholders on their returns. Because the

Barneses had no passthrough income from Whitney for 1996, their basis did not

increase by $22,282 in that year.

## 2. Failure To Make Downward Basis Adjustment for 1997

Recall that the Barneses' basis, for purposes of the limitation on deduction of

passthrough losses from Whitney for 1997, was $278,000 and that there was a

passthrough loss from Whitney to the Barneses for 1997 of $52,594, and a

suspended loss carried forward from 1996 of $136,228.50.[25] Instead of claiming a

---

[25]According to IRS calculations, see supra p. 19, there should have been an additional suspended loss carried forward from 1995 of $22,282. The IRS

(continued...)

deduction for Whitney losses of $188,822.50 (which is the sum of $52,594 and $136,228.50), the Barneses reported a deduction of only $52,594 on their return.

Pursuant to section 1366(a)(1)(A), shareholders of an S corporation take into account a pro rata share of the S corporation's losses in calculating their annual tax liabilities. A shareholder's "pro rata share" of losses is equal to the S corporation's loss multiplied by the proportion of the S corporation's total shares owned by the shareholder during the year in which the loss was incurred. See sec. 1377(a)(1). The S corporation is required to report the shareholder's pro rata share of the S corporation's loss to the shareholder on a Schedule K-1. See sec. 6037(a) and (b). Section 1366(d)(1) provides that losses taken into account in computing a shareholder's income pursuant to section 1366(a)(1) cannot exceed the shareholder's basis in the S corporation stock and the basis of any debt owed to the shareholder by the corporation.[26] Any passthrough losses that are disallowed currently because a shareholder lacks sufficient basis to take them into

_____

[25](...continued)
contends that this amount was erroneously claimed as a deduction by the Barneses in 1995. See supra note 4. According to the Barneses' basis calculations, this $22,282 suspended loss was absorbed by $22,282 of reported income from Whitney in 1996. See supra p. 20.

[26]We omit any further discussion of basis in debt of the corporation to the shareholder because nothing in the record indicates that the Barneses made any loans to Whitney. See supra note 2.

account as a deduction carry forward and are treated as incurred in the subsequent tax year with respect to that shareholder.  See sec. 1366(d)(2).

S corporation shareholders must make various adjustments to basis in their S corporation stock.  When a shareholder makes a contribution of capital to the S corporation, the shareholder increases basis in the S corporation stock by the amount of the contribution.  See secs. 351(a), 358(a), 1012.  With respect to loss, section 1367(a)(2)(B) requires the shareholder to reduce basis, but not below zero, by the amount of any losses described in section 1366(a)(1)(A) (generally, the shareholder's pro rata share of passthrough losses).

According to the IRS, section 1367(a)(2)(B) requires an S corporation shareholder to reduce basis by any losses that he or she is required to take into account under section 1366(a)(1)(A).  Basis is reduced, the IRS contends, even if the shareholder does not actually claim the passthrough losses on his or her return. Therefore, the IRS argues, the Barneses' basis was reduced by $136,228.50 for 1997 because of the $136,228.50 loss suspended in 1996 that the Barneses were required to take into account as a deduction for 1997.[27]  The Barneses' basis

_____

[27]In 1997, basis was also reduced by the $22,282 loss suspended in 1995. Pursuant to sec. 1366(d)(2), that loss was treated as incurred in 1997 with respect to the Barneses and, pursuant to sec. 1366(a)(1)(A), they were required to claim

(continued...)

calculations did not incorporate this reduction.  Therefore, says the IRS, their basis calculations for subsequent years were inaccurate.

The Barneses offer a different interpretation of the applicable statutes. Section 1367(a)(2)(B), they argue, requires basis reduction only for losses that the S corporation shareholder reports on his or her tax return and claims as a deduction when calculating tax liability.  Because they did not report the $136,288.50 loss for 1996 and they did not claim it as a deduction on their return for 1997 when they had adequate basis, the theory goes, the Barneses' basis was never reduced by the amount of that loss.  According to the Barneses' calculations, see supra p. 20, they had sufficient basis in 2003 to deduct their full, $276,289 share of Whitney's passthrough losses on their 2003 return.[28]

The plain language of sections 1366 and 1367 supports the IRS's interpretation.

----

[27](...continued)
the loss as a deduction on their 1997 return.  Instead, the Barneses calculated that basis was reduced for this loss for 1996.  See supra p. 20.

[28]Basis would have been sufficient ($289,511.43, after increasing for the $46,000 contribution of capital) to permit the Barneses to deduct the full $276,289 loss even if they had calculated basis without making the $22,282 upward basis adjustment that we determined was in error supra pp. 26-27.

Section 1367(a)(2)(B) provides that basis in S corporation stock is reduced by "items of loss and deduction described in subparagraph (A) of section 1366(a)(1)". Section 1366(a)(1) provides as follows:

> SEC. 1366(a). Determination of Shareholder's Tax Liability.--
>
> (1) In general.--In determining the tax under this chapter of a shareholder for the shareholder's taxable year in which the taxable year of the S corporation ends * * * there shall be taken into account the shareholder's pro rata share of the corporation's--
>
> (A) items of income (including tax exempt income), loss, deduction, or credit the separate treatment of which could affect the liability for tax of any shareholder, and
>
> (B) nonseparately computed income and loss.

Therefore, one of the items described in section 1366(a)(1)(A) is a shareholder's pro rata share of the S corporation's losses. The shareholder's "pro rata share" includes both current-year losses and--by virtue of section 1366(d)(2)--suspended prior-year losses that the shareholder was precluded from taking into account for the prior year by section 1366(d)(1). See sec. 1366(a)(1), (d). Section 1366(d)(2) provides that losses that are disallowed with respect to a shareholder by reason of section 1366(d)(1) "shall be treated as incurred by the corporation in the succeeding taxable year with respect to that shareholder."[29] Such losses are,

_____

[29]With respect to the Barneses' suspended 1996 losses, the "succeeding

(continued...)

therefore, an item described in section 1366(a)(1)(A) in the succeeding taxable year, and section 1367(a)(2)(B) requires that basis be reduced (but not below zero) by the amount of such items. The class of losses described in section 1366(a)(1)(A) is not limited to losses that were actually claimed as a deduction by the shareholder on the shareholder's tax return. Therefore, the basis reduction rule in section 1367(a)(2)(B) is not limited, as the Barneses contend, to losses that were actually claimed as a deduction on a return.

Because of their 1997 contribution of capital and the corresponding increase in basis, the Barneses had sufficient basis in their Whitney stock in tax year 1997 to take into account their full $136,228.50 share of Whitney's 1996 loss, which had been previously disallowed by section 1366(d)(1). That loss was an item described in section 1366(a)(1)(A) with respect to the Barneses for 1997 because section 1366(a)(1)(A) required the loss to be taken into account in determining the Barneses' correct tax for that year. Therefore, the IRS was correct in determining that, pursuant to section 1367(a)(2)(B), the Barneses' basis in their Whitney stock was reduced for 1997 by the amount of the $136,228.50 loss.

---

[29](...continued)
taxable year" is 1997.

B.    Tax Benefit Rule

The Barneses argue that, even if both the IRS's interpretation of section 1367 and its basis calculations are correct, the exclusionary component of the tax benefit rule permits the Barneses to claim the benefit in 2003 of the suspended loss they did not report as a deduction in 1997.

The tax benefit rule is a judicially created principle intended to remedy some of the inequities that would otherwise result from the annual accounting system used for federal income-tax purposes. See Hillsboro Nat'l Bank v. Commissioner, 460 U.S. 370, 377 (1983). The Supreme Court explains that "[t]he basic purpose of the tax benefit rule is to achieve rough transactional parity in tax, * * * and to protect the Government and the taxpayer from the adverse effects of reporting a transaction on the basis of assumptions that an event in a subsequent year proves to have been erroneous." Id. at 383. The rule has two components: an inclusionary component and an exclusionary component. The inclusionary component is a rule providing that, where a taxpayer properly deducts an outlay in one year and then, in a later year, recovers the same amount, the subsequent recovery is generally included in the taxpayer's gross income. See Hudspeth v. Commissioner, 914 F.2d 1207, 1212 (9th Cir. 1990), rev'g T.C. Memo. 1985-628. The exclusionary component of the rule, the component invoked by the Barneses,

provides generally that gross income does not include amounts subsequently recovered to the extent that the prior deduction did not give rise to a tax benefit. See id. Section 111(a) partially codified the exclusionary aspect of the tax benefit rule. Hillsboro Nat'l Bank v. Commissioner, 460 U.S. at 388. It provides: "Gross income does not include income attributable to a recovery during the taxable year of any amount deducted in any prior taxable year to the extent that such amount did not reduce the amount of tax imposed by this chapter." Sec. 111(a). The exclusionary component of the rule does not become an issue unless, and until, the inclusionary component of the rule is satisfied. Frederick v. Commissioner, 101 T.C. 35, 40-41 (1993); Home Mut. Ins. Co. v. Commissioner, 639 F.2d 333, 345-346 (7th Cir. 1980), aff'g in part, rev'g in part 70 T.C. 944 (1978).

The inclusionary component of the tax benefit rule would not require the Barneses to include in gross income for 2003 any amount deducted in a prior taxable year and subsequently recovered. Therefore, neither component of the tax benefit rule applies and section 111(a) does not provide for an exclusion from the Barneses' income for 2003.

C.    Net Operating Loss

Finally, the Barneses contend that, even if the IRS is correct with respect to basis in the Whitney stock, their failure to claim $136,228.50 in passthrough

losses on their 1997 return caused them to incorrectly calculate their net operating loss (NOL) for that year.[30] They argue that the amount of their 1997 NOL should be recalculated, taking into account the $136,228.50 they failed to deduct and giving rise to an NOL for 1997 of $136,228.50. They argue further that, because they "never used" this NOL, it remains available to offset their taxable income for 2003.[31]

Defined generally, an NOL is the excess of allowable deductions over gross income for a given tax year. Sec. 172(c). In calculating the NOL amount for individual taxpayers, only certain deductions, including passthrough S corporation losses, are considered. See sec. 172(c) and (d); sec. 1.172-3(a), Income Tax Regs. An NOL is first carried back to offset taxable income for the two tax years

---

[30]The Barneses' 1997 income-tax return is not in the record. However, an electronic summary of their 1997 return that is in the record shows they reported a net loss of $7,259 for the year.

[31]The Barneses do not specify why their purported NOL was "unused". In theory, this NOL might be "unused" because the Barneses did not have sufficient taxable income to offset it. However, the Barneses do not claim that the NOL remained unused in 2003 for absence of taxable income, and there is insufficient evidence in the record for us to determine their taxable income for the relevant years. More likely, the Barneses are contending that the purported NOL remained "unused" because they did not report it as an offset to income on a tax return.

preceding the year in which the NOL was incurred;[32] an NOL, to the extent that it was not carried back to a previous tax year, can be carried forward to offset taxable income for as many as 20 years after the year in which the NOL was incurred. See sec. 172(b)(1)(A). Section 172(b)(2) requires that an NOL be consumed in the earliest year for which there is income available to be offset by the loss. Any excess NOL that is not consumed in one year is carried to the next earliest year. See sec. 172(b)(2).

The Barneses claim that they are entitled to a net operating loss deduction on their 2003 income-tax return. The ultimate source of the NOL deduction sought by the Barneses for 2003 is their NOL for 1997. The Barneses do not explain how the trial record supports their argument, and we observe that the record is missing the following information necessary to establish their entitlement to a 2003 NOL deduction:

- The Barneses' income-tax returns showing their reported income (or NOLs) for the following years: 1995, 1997, 1998, 1999, 2000, 2001, and 2002.

---

[32]Sec. 172(b)(3) allows a taxpayer to elect to waive the carryback period. There is no evidence that the Barneses elected to waive the carryback period.

• Evidence supporting the calculation of any elements of the correct computation of income (or NOLs) for the following years: 1995, 1996, 1997, 1998, 1999, 2000, 2001, and 2002.

Although the Barneses allude to a theory that a time bar affects the 1997 tax year, they have not provided a factual basis for carrying a 1997 NOL all the way forward to their 2003 tax return. For its part, the IRS argues that the Barneses' NOL argument should be rejected because of the dearth of supporting evidence and should not even be considered because the Barneses waited until after trial to raise this contention. We agree with both of the IRS's contentions and so reject the Barneses' NOL argument.

III.    Overstatement of Gross Receipts for the Sole Proprietorship

The Barneses claim that a $60,000 check, written by Anheuser-Busch to Influence Entertainment and deposited by Influence Entertainment in its bank account, was erroneously reported in the gross receipts of the sole proprietorship. They contend that only half of the $60,000 was earned by the sole proprietorship and that the other half was earned by Influence Entertainment. To support this contention, the Barneses rely on the June 4, 2003, check from Anheuser-Busch, Inc., and an invoice attached to that check. The check was made out to "Influence Entertainment" for $60,000. A copy of this check, which is canceled, appears to

show that it was deposited in a bank account owned by Influence Entertainment, and a bank statement for Influence Entertainment reflects a $60,000 deposit on June 5, 2003. An invoice from Anheuser-Busch, also dated June 4, 2003, was attached to the check. It identifies "Influence Entertainment" as the vendor and lists two items: "Sponsorship Mkt" for $30,000 and "Sponsorship1 Mkt", also for $30,000. According to the Barneses, the fact that Anheuser-Busch divided the total $60,000 payment into two, separate $30,000 invoice items indicates that $30,000 was for services Influence Entertainment rendered and $30,000 was for services the sole proprietorship rendered. Therefore, they contend that the sole proprietorship's income was $30,000 less than the amount they reported on their 2003 return.

The Barneses did not submit evidence on how they calculated the $168,997 that they reported as gross receipts from their sole proprietorship. Consequently, there is insufficient evidence that the $60,000 check was included in the $168,997 amount. Because we find that the Barneses have not satisfied their burden of proof, we sustain the determination of the IRS as to this issue.

IV.    Accuracy-Related Penalty

In the notice of deficiency, the IRS determined that the Barneses are liable for a section 6662(a) accuracy-related penalty of $10,897. The IRS asserts that

this penalty is appropriate because the Barneses substantially understated their income-tax liability for 2003.[33]  See sec. 6662(b)(2).  We agree.

Under section 7491(c), the IRS bears the burden of production with respect to penalties.  In order to meet this burden, the IRS must come forward with sufficient evidence that it is appropriate to impose a particular penalty.  See Higbee v. Commissioner, 116 T.C. at 446.  If the IRS has satisfied its burden of production, the taxpayer has the burden of persuading the court that the IRS's determination is incorrect.  See Rule 142(a); Higbee v. Commissioner, 116 T.C. at 447.  A taxpayer can meet this burden by proving that he or she acted with reasonable cause and in good faith or that there was substantial authority for the tax treatment of an item. See Viralam v. Commissioner, 136 T.C. 151, 173 (2011).

Section 6662(a) imposes a penalty of 20% of any underpayment attributable to a substantial understatement of income tax.  See sec. 6662(a), (b)(2).  In general, an understatement of income tax is the excess of the amount required to

---

[33]In the notice of deficiency, the IRS determined two additional bases for imposing the sec. 6662(a) penalty:  (1) negligence or disregard of rules or regulations and (2) a substantial valuation overstatement.  The IRS did not address either of these theories on brief and did not identify any facts in the record that might support these theories.  Therefore, we find the IRS has not met its burden of production with respect to these alternative theories, see sec. 7491(c), and that the Barneses are not liable for a sec. 6662(a) accuracy-related penalty by reason of (1) negligence or (2) a substantial valuation overstatement.

be shown on the taxpayer's return for a given year over the amount actually shown

on the return. See sec. 6662(d)(2); sec. 1.6662-4(b)(2), Income Tax Regs. An

understatement is substantial if it exceeds the greater of 10% of the tax required to

be shown on the return or $5,000. Sec. 6662(d)(1)(A); sec. 1.6662-4(b)(1), Income

Tax Regs.

The IRS has satisfied its burden of production. The Barneses understated

their 2003 income-tax liability by $54,486.[34] This amount exceeds both 10% of the

tax required to be shown on the return[35] and $5,000. Therefore, the IRS has come

forward with sufficient evidence that it is appropriate to impose an accuracy-related

penalty on the Barneses for the tax year 2003 because they substantially understated

their income tax for that year. The Barneses have the burden of demonstrating that

they are not liable for the penalty.

The Barneses assert a number of defenses. They argue first that they are not

liable for a section 6662(a) accuracy-related penalty due to a substantial

understatement of income tax because there was substantial authority for their

---

[34]The amount required to be shown on the Barneses's 2003 income-tax return is $85,240. The amount shown on the return filed by the Barneses for tax year 2003 is $30,754. The difference between those two amounts--the amount of the understatement--is $54,486.

[35]Ten percent of the tax required to be shown on the return is $8,524.

failure to reduce basis in the S corporation stock. Any understatement of income tax attributable to a position for which there was substantial authority is excluded in determining whether there was a substantial understatement of income tax. See sec. 6662(d)(2)(B)(i); sec. 1.6662-4(d)(1), Income Tax Regs. Substantial authority for the tax treatment of an item exists where the weight of the authorities supporting a given position is substantial in relation to the weight of those supporting a contrary position. Sec. 1.6662-4(d)(3)(i), Income Tax Regs. The substantial authority standard is more difficult for the taxpayer to meet than the reasonable basis standard,[36] but the position need not have a greater-than-50% chance of being upheld in litigation. See sec. 1.6662-4(d)(2), Income Tax Regs. A taxpayer may have substantial authority for a position even where it is supported only by a well-reasoned construction of the applicable statutory provision. Sec. 1.6662-4(d)(3)(ii), Income Tax Regs.

We find that there was not substantial authority for the Barneses' treatment of their basis in the Whitney stock. The Barneses have not identified any authorities which support their position but have offered only their incorrect interpretation of sections 1366 and 1367. While their interpretation is not

[36]Sec. 1.6662-3(b)(3), Income Tax Regs., defines "reasonable basis" as a relatively high standard; it is not satisfied by a position that is merely an arguable or colorable claim.

frivolous, it is not a sufficiently well-reasoned construction of the applicable statute to qualify as "substantial authority" for their position.

Next, the Barneses assert that they are not liable for an accuracy-related penalty because they acted with reasonable cause and in good faith. The section 6662(a) penalty does not apply to any portion of an underpayment of tax with respect to which there was reasonable cause and the taxpayer acted in good faith. See sec. 6664(c)(1); sec. 1.6664-4(a), Income Tax Regs. Whether the taxpayer acted with reasonable cause and in good faith is determined on a case-by-case basis, taking into account all pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. An honest misunderstanding of fact or law that is reasonable in light of the knowledge, experience, and education of the taxpayer may constitute reasonable cause and good faith. Id.

The Barneses assert that, because the provisions at issue here are complex, their failure to appropriately adjust basis in their Whitney stock was just such a reasonable mistake. However, statutory complexity alone does not constitute reasonable cause. See Edgar v. Commissioner, 56 T.C. 717, 762-763 (1971); Ellwest Stereo Theatres of Memphis, Inc. v. Commissioner, T.C. Memo. 1995-610, slip op. at 12-13. The most important factor in the reasonable-cause analysis is generally the extent of the taxpayer's effort to accurately determine his or her

tax liability. Sec. 1.6664-4(b)(1), Income Tax Regs. The Barneses have introduced no evidence regarding what efforts they made to determine the proper tax treatment of their S corporation stock, aside from hiring a professional tax adviser. The Barneses have not offered any evidence that they were aware of the complexity of the provisions at issue or that this complexity was the cause of their noncompliance. They have, therefore, failed to carry their burden of proof.

Finally, the Barneses argue that they are not liable for an accuracy-related penalty because they relied on professional tax advice in preparing their return. Reliance on the advice of a professional adviser may be evidence of reasonable cause and good faith, provided the taxpayer's reliance was reasonable under the circumstances. Sec. 1.6664-4(b)(1), (c)(1), Income Tax Regs. Such reliance is reasonable if the taxpayer can demonstrate, by a preponderance of the evidence, that (1) the adviser was a competent professional with expertise sufficient to justify reliance, (2) the taxpayer provided necessary and accurate information to the adviser, and (3) the taxpayer relied in good faith on the judgment of the adviser. Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 99 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002). The Barneses have made no such showing.

The Barneses' 2003 return was prepared by an employee of the firm Sakyi & Associates. The Barneses assert on brief that this firm "held itself out as a

professional preparer", that they relied on the firm, and that the firm's advice was erroneous. But they did not support these assertions with testimony or documentary evidence. We need not, and do not, conclude from the fact that the Barneses hired Sakyi that the firm was solely responsible for errors on the return: the firm's ability to advise the Barneses and prepare their return may have been limited by inadequate information or erroneous basis calculations from prior tax years. Consequently, we find the Barneses have not carried their burden of proof with respect to their reasonable cause and good faith defense.

We have considered all arguments, and contentions not addressed are meritless, irrelevant, or moot.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.