# United States Tax Court

T.C. Summary Opinion 2022-22

JENNIFER JOY FIELDS AND WALTER T. FIELDS,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————————

Docket No. 2925-20S.                          Filed November 10, 2022.

————————

Jennifer Joy Fields and Walter T. Fields, pro sese.

*Deborah R. Kelessidis*, for respondent.

## SUMMARY OPINION

PANUTHOS, *Special Trial Judge*:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

In a notice of deficiency dated January 6, 2020, respondent determined a deficiency in federal income tax of $25,917 and a section 6662(a) accuracy-related penalty of $5,133 for petitioners' taxable year 2017 (year in issue).  After concessions,[2] the issues for decision are:

---

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, all regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2] Petitioners conceded they were required to include $6,413 in taxable wages from LTF Club Management Co., LLC (LTF), for the year in issue.

(1)     whether petitioners failed to report income of $79,581 for the year in issue; and

(2)     whether petitioners are liable for a section 6662(a) accuracy-related penalty for the year in issue.

*Background*

Some of the facts have been stipulated and are so found.  We incorporate the Stipulation of Facts and the attached Exhibits by this reference.  The record consists of the Stipulation of Facts with attached Exhibits and the testimony of Jennifer Joy Fields (petitioner).

Petitioners resided in California when the Petition was timely filed.

I.     *Petitioner's Employment*

From January 2009 to January 2017, petitioner was an employee of Paragon Canada ULC.  Paragon Canada ULC operated in Canada, and it operated in the United States as Paragon Gaming (collectively, Paragon).  Petitioner was employed as vice president of customer development and marketing at Paragon and worked in Vancouver, British Columbia, Canada.  During the time of petitioner's employment, the chief executive officer of Paragon was Scott Menke.[3]  Text messages and emails between petitioner and Mr. Menke reflect a relationship between the two outside the workplace.

On February 29, 2012, Paragon wired $35,000 Canadian dollars (CAD) to petitioner's bank account.  Paragon's internal records noted the wire payment as "Outgoing Wire Transfer~~Jennifer Fields."

In 2014 petitioner purchased a home in Point Roberts, Washington, for $370,000.  The downpayment on the purchase was $53,020, and on March 20, 2014, Paragon wired $53,020 to Chicago Title in Whatcom County, Washington.  Paragon's internal records noted the wire payment as "Cash-General" and as "Wire Payment Chicago Title-J Fields."

On January 13, 2017, petitioner separated from Paragon.  At the time of separation, petitioner was working at Edgewater Casino LP in Vancouver, which was being managed by Paragon.  In a severance

---

[3] Scott Menke died in October 2020.

agreement signed by a representative of Paragon and petitioner on January 13, 2017, the respective parties, in addition to providing for severance payments, agreed as follows:

> Write off of Employee Advances: The $79,581.50[4] in employee advances that are currently outstanding with the company and owed by you will be written off. You will provide the company with a complete W–9 form. The company will subsequently issue you a 1099, and you will be responsible for remitting any applicable taxes.

Before separation, petitioner's attorney had corresponded with Paragon to discuss possible revised terms of separation. Pursuant to a purported oral agreement between petitioner and Scott Menke, a second, revised severance agreement was drafted. The revised draft severance agreement removed the above-mentioned provision, instead providing:

> Repayment of Loan: The $88,000 in personal loans for the company to you, will be withheld from the total severance amounts described above, provided that you have signed and returned copies of this letter and the Final Release.

This revised draft severance agreement was not signed.

On January 13, 2017, petitioner executed a Form W–9, Request for Taxpayer Identification Number and Certification, which was provided to Paragon. Paragon subsequently issued to petitioner and filed with the Internal Revenue Service (IRS) a Form 1099–MISC, Miscellaneous Income, reporting $79,581 in other income for the year in issue.

After petitioner's separation from Paragon in January 2017, petitioner engaged in other projects with Mr. Menke and Paragon in a consulting role in 2017 and 2019.

---

[4] This amount, $79,581.50, was the total in U.S. dollars (USD) on January 12, 2017. Paragon wired $35,000 CAD to petitioner on February 29, 2012. This amount was converted to $26,561.50 USD on January 12, 2017, at the exchange rate of 1 CAD to .7590 USD. This amount, in addition to the $53,020 USD wired on March 20, 2014, totaled $79,581.50.

II.     *Petitioner's Tax Return and Examination*

Petitioners timely filed Form 1040, U.S. Individual Income Tax Return, for the year in issue on March 5, 2018. Petitioners were assisted in preparing the return by a paid preparer. The return did not include any amounts reported on the Form 1099–MISC that Paragon filed with the IRS by Paragon.

The IRS Automated Underreporter (AUR) Program[5] determined a mismatch between the reported income on petitioners' Form 1040 and the amount reported on the filed Form 1099–MISC from Paragon.

On January 6, 2020, respondent issued a notice of deficiency to petitioners for the year in issue, adjusting petitioners' income to include $79,581 in other income from Paragon and $6,413 in taxable wages from LTF. Respondent also determined that petitioners were liable for a section 6662(a) and (b)(2) accuracy-related penalty for an underpayment attributable to a substantial understatement of income tax.

## *Discussion*

Generally, the Commissioner's determinations in a notice of deficiency are presumed correct, and the taxpayer bears the burden of proving that those determinations are erroneous. Rule 142(a); *Welch v. Helvering*, 290 U.S. 111, 115 (1933).[6] In order for the presumption of correctness to attach to the deficiency determination in unreported income cases in the U.S. Court of Appeals for the Ninth Circuit, the Commissioner must establish "some evidentiary foundation" connecting the taxpayer with the income-producing activity or demonstrate that the taxpayer received unreported income. *Weimerskirch v. Commissioner*, 596 F.2d 358, 361–62 (9th Cir. 1979), *rev'g* 67 T.C. 672 (1977). Once the Commissioner introduces such evidence, the burden shifts to the

---

[5] The AUR program matches "third-party-reported payment information against [a taxpayer's] already-filed" tax return. *Essner v. Commissioner*, T.C. Memo. 2020-23, at *11. When there is a discrepancy, the AUR program calculates a proposed deficiency based on the statutory scheme and prepares a letter to the taxpayer requesting an explanation for the discrepancy. Service Center Notice 200211040 (Mar. 15, 2002). If the taxpayer does not respond, the program will issue a notice of deficiency. *Id.* If the taxpayer does not respond to the notice of deficiency, the deficiency will be assessed. *Id.*

[6] Pursuant to section 7491(a), the burden of proof as to factual matters shifts to the Commissioner under certain circumstances. Petitioners have neither alleged that section 7491(a) applies nor established their compliance with its requirements. Therefore, petitioners bear the burden of proof.

taxpayer to show by a preponderance of the evidence that the determination was arbitrary or erroneous. *Klootwyk v. Commissioner*, T.C. Memo. 2006-130, slip op. at 4–5.

Petitioners do not dispute the amount reported on the Form 1099–MISC or that they received the amount reported. Petitioners instead assert that the amount was nontaxable because it was a gift. On the basis of petitioners' stipulated receipt of the amount reported and the Form 1099–MISC filed with the IRS by Paragon, respondent has met his burden as to the unreported income. Accordingly, the burden of proof shifts to petitioners.

I.    *Unreported Income*

Gross income includes "all income from whatever source derived." *See* § 61(a). Payments that are "undeniable accessions to wealth, clearly realized, and over which the taxpayers have complete dominion" are taxable as income unless an exclusion applies. *Commissioner v. Glenshaw Glass Co.*, 348 U.S. 426, 431 (1955).

Section 102(a) excludes from gross income the value of property acquired by gift from gross income. Generally, amounts transferred by or for an employer to, or for the benefit of, an employee are includible in gross income. § 102(c)(1). A gift must proceed from a detached and disinterested generosity, motivated by affection, respect, admiration, charity, or the like. *See Commissioner v. Duberstein*, 363 U.S. 278, 285 (1960). There is a strong presumption that payments made beyond an employee's salary are compensation for services and not gifts. *See Van Dusen v. Commissioner*, 166 F.2d 647 (9th Cir. 1948), *aff'g* 8 T.C. 388 (1947). A payment between an employer and an employee may be a gift when the relationship between the employer and the employee is personal and unrelated to work. *Caglia v. Commissioner*, T.C. Memo. 1989-143; *Harrington v. Commissioner*, T.C. Memo. 1958-194.

Petitioner offered testimony as to her personal relationship with Mr. Menke. In support of her assertion of a personal relationship and Mr. Menke's intent to make a gift, petitioner produced emails, text messages, and an unsigned draft severance agreement that removed the text pertaining to the $79,581 being written off as an employee advance.

The communications presented consist of an email with Mr. Menke's administrator scheduling dinner in 2017, a meeting scheduling email with Paragon stakeholders in 2019, and unverified text messages from petitioner to Mr. Menke. While petitioner and Mr. Menke

corresponded after her separation from Paragon, their communications do not demonstrate that the payments were intended to be a gift. While petitioner and Mr. Menke reached an oral compromise regarding the terms of separation, the second, revised draft severance agreement was not signed. Even considering the revised agreement and a relevant provision, it is ambiguous at best. The text of the revised draft severance agreement does not necessarily support petitioner's position that the employer intended a gift to petitioner. At best, it reflects petitioner's attempt to recharacterize the payments as a gift, which apparently neither Mr. Menke nor Paragon agreed to. There is no evidence in the record from which the Court could conclude that Mr. Menke or Paragon intended to make a gift to petitioner. The payments were made from Paragon to petitioner and recorded as accounts receivables in Paragon's accounting records. Paragon's inclusion of the disputed amount in the signed and executed severance agreement and the subsequent issuance of a Form 1099–MISC indicates that the payments were not intended to be a gift.

We find petitioner's testimony that she had a personal relationship with Mr. Menke is insufficient to support her contention that the payments were a gift.

Petitioner has failed to establish that the $79,581 amount was a gift. Accordingly, we sustain respondent's determination.

II.    *Section 6662(a) Accuracy-Related Penalty*

Respondent determined that petitioners are liable for an accuracy-related penalty on their underpayment of tax for the year in issue because of a substantial understatement of income tax. Section 6662(a) and (b)(2) imposes an accuracy-related penalty of 20% on any portion of an underpayment of tax required to be shown on a return attributable to the taxpayer's "substantial understatement of income tax." An understatement of income tax is substantial if the amount of the understatement for the taxable year exceeds the greater of 10% of the tax required to be shown on the return or $5,000. § 6662(d)(1)(A).

A.    *Burden of Proof*

The Commissioner generally bears the burden of production with respect to a section 6662 penalty. *See* § 7491(c). To satisfy that burden the Commissioner must offer sufficient evidence to indicate that it is appropriate to impose the penalty. *See Higbee v. Commissioner*, 116 T.C. 438, 446 (2001). Once the Commissioner meets his burden of

production, the taxpayer must come forward with evidence sufficient to show the Court that the determination is incorrect. *Id.* at 446–47. If the understatement of income tax for the year in issue is substantial, the Commissioner has satisfied the burden of producing evidence that the penalty is justified.

Respondent determined a deficiency in tax, increasing petitioners' total tax liability to $25,917. Respondent has met his burden because the amount of petitioners' understatement for the year in issue was "substantial" in that it exceeded the greater of 10% of the tax required to be shown on the return or $5,000. *See* § 6662(d)(1)(A).

The Court has held that accuracy-related penalties determined by an IRS computer program without human review are "automatically calculated through electronic means" and are thus exempt from the written supervisory approval requirement[7] that generally applies to such penalties. *See Walquist v. Commissioner*, 152 T.C. 61, 73 (2019). This exception includes returns processed through the AUR program when the IRS issues a CP2000 notice to a taxpayer and the taxpayer fails to respond to the notice. *See Walton v. Commissioner*, T.C. Memo. 2021-40, at *9–10; *Ball v. Commissioner*, T.C. Memo. 2020-152, at *12–13.

Respondent asserts, and the record supports him, that the accuracy-related penalty at issue was automatically calculated through electronic means and, therefore, falls within the section 6751(b)(2)(B) exception to the written supervisory approval requirement.

B.    *Reasonable Cause and Good Faith*

Once the Commissioner has met his burden, the taxpayer may avoid a section 6662(a) accuracy-related penalty to the extent that he or she can demonstrate (1) reasonable cause for the underpayment and (2) that he or she acted in good faith with respect to the underpayment. § 6664(c)(1). The decision as to whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, considering all pertinent facts and circumstances, including: (1) the taxpayer's efforts to assess the proper tax liability, (2) the knowledge

---

[7] Generally, the burden of production includes producing evidence establishing that the penalty was "personally approved (in writing) by the immediate supervisor of the individual making such determination" unless a statutory exception applies. § 6751(b)(1).

and experience of the taxpayer, and (3) reliance on the advice of a tax professional. Treas. Reg. § 1.6664-4(b)(1).

An honest misunderstanding of the law that is reasonable in the light of the facts and circumstances may support a conclusion that a taxpayer acted with reasonable cause and in good faith with respect to a reported position. *Id.*; *see also Higbee*, 116 T.C. at 448–49. Generally, the most important factor is the extent of the taxpayer's efforts to assess his or her proper tax liability. Treas. Reg. § 1.6664-4(b)(1). Statutory complexity alone does not constitute reasonable cause. *Barnes v. Commissioner*, T.C. Memo. 2012-80, *aff'd*, 712 F.3d 581 (D.C. Cir. 2013).

While they were assisted in preparing their tax return and timely filed their return, petitioners were aware of the provisions of the Paragon Severance agreement and the subsequently issued Form 1099–MISC. Also, they conceded that the taxable wages of $6,413 attributable to LTF were required to be included in their income for the year in issue and did not provide any further explanation as to why that amount was not reported in their return. Petitioners have not established they acted in good faith to properly report their tax liability and accordingly have not established that they had reasonable cause for the underpayment.

Petitioners are liable for the accuracy-related penalty for an underpayment due to a substantial understatement of income tax for taxable year 2017. Respondent's determination is sustained.

We have considered all of petitioners' arguments, and, to the extent not addressed herein, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

*Decision will be entered for respondent.*